IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAYLA BENOIT and<br>NICOLE CASTLEBERRY,<br><br>        Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>        Defendant. | Case No. 3:21-CV-811-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Kayla Benoit and Nicole Castleberry ("Plaintiffs") own a cabin along the Illinois River in Jersey County, Illinois, on land leased from the U.S. Army Corps of Engineers ("Corps"). In June 2021, Plaintiffs realized their 10-year lease had been terminated for failure to pay rent. They then sought and received a temporary restraining order ("TRO") from this Court preventing the Corps from tearing down or otherwise destroying their cabin. Now, after a hearing and appointment of counsel for Plaintiffs, the Corps seeks to dissolve the TRO and dismiss the case for lack of subject matter jurisdiction. (Doc. 12). Plaintiffs oppose the Corps' motion. (Doc. 21). For the reasons set forth below, the Corps' motion is granted in part and denied in part.

## BACKGROUND

In the early 1950s, the Corps began leasing a small amount of federal land along the Mississippi and Illinois rivers to private individuals for recreation. (Doc. 12 at p. 2). The lessees pay a nominal amount of rent, in this case $550 per year, and may build a

small cabin on the land. (*Id.*). The lessee then owns the cabin, but the land itself remains property of the federal government. (*Id.*). Currently, the Corps is in the process of phasing out this program; if a lease is cancelled, the Corps will not lease that parcel again. (*Id.*). Currently, there are about 200 active leases remaining. (*Id.*).

At issue here is a 10-year lease that began on January 1, 2015, for a parcel of land along the Illinois River in Jersey County, Illinois. (*Id.*). Plaintiffs obtained the lease after a family member transferred it to them, with approval from the Corps, in December 2017. (*Id.*; Doc. 1-3 at p. 24). Rent was due in two equal installments of $275 semi-annually on January 1 and July 1. (Doc. 1-3 at pp. 12, 23). Although not required by the lease, the Corps mailed invoice statements for rent payments to Plaintiffs each year at their address of record in Ferguson, Missouri. (Doc. 12 at p. 2).

Between 2018 and 2020, Plaintiffs paid the rent, though their payments were typically late, resulting in a number of delinquency letters. (Doc. 12-1). Plaintiffs also failed to timely pay their rent on January 1, 2021. The Corps sent overdue notices to Plaintiffs on February 1, 2021, and March 1, 2021. (*Id.* at pp. 4, 8). On April 1, 2021, the Corps sent a final notice for payment that assessed interest and late fees. (*Id.* at pp. 4-5). The final notice further cited Condition 14a of the lease, which stated: "abandonment or nonuse of the premises for one (1) year or non-payment of the rent for ninety (90) days past the due date will be considered notice of termination of the lease by the lessee." (*Id.* at p. 4). The letter advised Plaintiffs that their failure to pay by April 30, 2021, would constitute their termination of the lease. (*Id.*). The Corps indicated it would not accept any payment postmarked later than April 30, 2021. (*Id.*).

When Plaintiffs still failed to pay the rent, the Corps sent a Notice of Termination by certified mail on May 6, 2021. (*Id.* at p. 2). The notice provided Plaintiffs with 30 days to remove their personal property from the structure or else face a potential court action for ejectment. (*Id.*). The United States Postal Service's Certified Mail receipt allegedly was forged by a USPS employee; Plaintiffs did not actually receive it. (Doc. 1 at p. 5; Doc. 12-1 at p. 3). A second letter was sent via FedEx on June 14, 2021. (Doc. 12-1 at p. 1).

Plaintiffs claim—and the Corps does not dispute—that they never received any of these letters. Plaintiffs had moved in June 2020 and failed to notify the Corps of their new address. (Doc. 1-3 at p. 6). Additionally, the USPS did not forward the letters to their new address. (Doc. 1 at p. 5). Instead, a neighbor called Plaintiffs on June 15, 2021, to alert them that a notice of termination had been posted on the cabin. (*Id.*). The notice stated that Plaintiffs had until June 30, 2021, to remove their personal items and that the cabin was going to be torn down. (Doc. 1-3 at p. 1). Plaintiffs immediately contacted the Corps and discovered the rent had not been paid. (*Id.*). They offered to pay the rent due, any late penalty, and/or multiple years of rent in advance, but the Corps refused. (*Id.*). After discovering the tampering and forgery of the USPS Certified Mail receipt,[1] Plaintiffs called the Corps and asked it to reconsider. (*Id.*). The Corps again refused. (*Id.*).

On July 14, 2021, Plaintiffs filed their Complaint and Motion for Temporary Restraining Order in this Court alleging the Corps violated their due process rights under the Fifth and Fourteenth amendments when it terminated their lease. (Docs. 1, 6). Finding

---

[1] Plaintiffs assert the USPS Postal Inspector is conducting an investigation into the alleged forgery.

that Plaintiffs had a "better than negligible" chance of succeeding on the merits of their claim, that they would suffer irreparable harm absent injunctive relief, and that they had no adequate remedy at law, the Court granted Plaintiffs' motion and enjoined the Corps from destroying, demolishing, or taking any other action as to the real property located at Mississippi River Pool 26, Lot No. 004, Otter Creek Subdivision, Jersey County, Illinois. (Doc. 10). The Court further set the matter for a hearing.

Two days before the scheduled hearing, the Corps filed a motion to dissolve the TRO and to dismiss the matter for lack of subject matter jurisdiction. (Doc. 12). The Corps argues Plaintiffs cannot make out a case for a due process violation when they were aware of the amount due and the due date, they moved without notifying the Corps, and they failed to timely pay rent. The Corps also argues that to the extent any actual controversy exists, it is governed by the Contract Disputes Act, 41 U.S.C. § 7101, *et seq.*

After the hearing on July 29, 2021, the Court appointed counsel to represent Plaintiffs and to respond to the Corps' complex arguments regarding subject matter jurisdiction. (Doc. 14). The Court also extended the TRO to allow for additional briefing on the matter. (Docs. 14, 20).

## DISCUSSION

### I. Subject Matter Jurisdiction

The Court first addresses the Corps' argument that this Court lacks subject matter jurisdiction, which, if true, would deprive the Court of authority to take further action. The Corps argues that the dispute between the parties is governed by the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101, *et seq.* In turn, the CDA provides an

administrative process for resolving disputes, with final agency determinations appealable to the Armed Services Board of Contract Appeals or the United States Court of Federal Claims. *See generally* 41 U.S.C. §§ 7103-7107. Because the CDA applies, the Corps argues, Plaintiffs must first seek to resolve the issue through applicable administrative remedies. Plaintiffs have failed to do so, and thus the Corps asserts that this Court does not have jurisdiction to hear the suit, and it should be dismissed.

In response, Plaintiffs argue that the parties never agreed the CDA applies and the lease does not provide for dispute resolution pursuant to the CDA. In fact, the lease at issue was part of a program that started in the early 1950s to lease parcels of federal land along the Mississippi and Illinois rivers to private individuals pursuant to 16 U.S.C. § 460d. That program was in place long before the CDA was enacted in 1978. Furthermore, they argue, several courts interpreting claims arising out of 16 U.S.C. § 460d have found that subject matter jurisdiction is secure.

The CDA falls under Title 41 of the U.S. Code, titled "Public Contracts." Among other things, Title 41 addresses federal procurement policy, contracts for materials, supplies, and equipment, service contract labor standards, drug-free workplace requirements for federal contractors, and kickbacks. *See generally* 41 U.S.C. § 101, *et seq.* Generally, the purpose of CDA was to centralize the adjudication of government contract disputes. *McDonnell Douglas Corp. v. United States*, 754 F.2d 365 (Fed. Cir. 1985). Thus, federal district courts do not have jurisdiction to hear government contract claims that are subject to the CDA. *Id.* at 370; *United States v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1134 (N.D. Ga. 1992).

Under 41 U.S.C. § 7102(a)(1)–(4), the CDA applies to contracts made by an executive agency for:

(1) the procurement of property, other than real property in being;
(2) the procurement of services;
(3) the procurement of construction, alteration, repair, or maintenance of real property; or
(4) the disposal of personal property.

The Corps argues that section (4) applies here, citing *Lee's Ford Dock, Inc. v. Secretary of the Army*, 865 F.3d 1361 (Fed. Cir. 2017). In that case, Lee's Ford Dock, Inc., entered into a lease with the Corps for 166 acres of land and water real estate on Lake Cumberland. *Id.* at 1363. The lease was for a 25-year term, with the option to extend it for an additional 25 years. *Id.* The lease's Disputes Clause stated that "all disputes arising under or relating to this lease shall be resolved under this clause and the provisions of the [Contract Disputes] Act." *Id.* at 1364.

Under the lease, the Corps reserved the right to manipulate the water levels of Lake Cumberland. *Id.* at 1363. Seven years into the lease, the Corps determined the dam was at a high risk of failure and initiated risk reduction measures, including lowering the water level for the next seven years until work on the dam was complete. *Id.* at 1364. The reduction in water levels severely impacted Lee's Ford Dock, which was dependent on the higher water levels for its marina operations. *Id.* It filed a claim with the contracting officer for damages of $4 million associated with the depressed water levels and reduced marina revenues. *Id.*

After its claim was denied administratively, Lee's Ford Dock appealed to the Federal Circuit, which has exclusive jurisdiction over an appeal from a final decision of

an agency board regarding a contract covered by the CDA. *Id.* at 1366. The Corps argued that the Federal Circuit lacked jurisdiction because the case did not arise under the CDA. The Federal Circuit noted, "[i]t is well settled that leasehold interests are items of personal property unless a statute commands otherwise." *Id.* at 1367. Further, under the CDA, "leases are normally considered within the realm of contracts . . . and also are personal (rather than real) property." *Id.* at 1367.

To determine whether the CDA applied in that case, the Federal Circuit considered whether the contract was made by the Corps for "the disposal of personal property." *Id.* It found that "dispose" has a very broad meaning, including "to direct or assign for a use; to pass over into the control of someone else; to alienate, bestow, or part with." *Id.* By entering into a lease with Lee's Ford Dock, Inc., the Corps "bestowed," "directed," and "assigned"—and therefore disposed of—a personal property right to Lee's Ford Dock to operate a marina on the leased premises. *Id.* Thus, the lease was within the purview of the CDA, and the case was properly before ethe Federal Circuit. *Id.* at 1368.

In *United States v. Triple A Machine Shop, Inc.*, the Ninth Circuit took a different approach when it found that a dispute over a lease was not governed by the CDA and, therefore, the district court had subject matter jurisdiction. In that case, the Navy had leased a portion of a shipyard to Triple A Machine Shop, but later elected not to renew the lease. *United States v. Triple A Mach. Shop, Inc.*, 857 F.2d 579, 582 (9th Cir. 1988). Negotiations to enter into a new lease for a smaller portion of the land failed, and the lease expired on June 30, 1986. *Id.* Triple A, however, refused to surrender the property. *Id.* The government filed a "Complaint for Ejectment and Writ of Possession" in the

district court, and Triple A moved to dismiss for lack of jurisdiction because the CDA applied. *Id.* at 582-83. Triple A argued that the lease granting the right to occupy real property for a specified period of time was a contract for the disposal of personal property, and thus fell within section 4 of the CDA. *Id.* at 583.

The Ninth Circuit disagreed, finding that Triple A's argument distorted the difference between personal and real property. *Id.* at 584. The Court held that the "contract involved here (the lease) is not for the 'disposal of' a lease but for the 'disposal of' the real property." *Id.* Furthermore, treating the contract "as one for the disposal of personal property would distort the essential character of the lease," which was for the lease of a large piece of real property, buildings, and fixtures. *Id.* at 585. Because the dispute did not involve the disposal of personal property, it did not fall under the CDA and the district court had jurisdiction over the case.[2] *Id.*

The Court finds this case is more analogous to *Triple A Machine Shop* than to *Lee's Ford Dock*. The Corps did not bestow, direct, or assign a personal property right to Plaintiffs; it entered into a lease for Plaintiffs to occupy land, that is, real property. (*See* Doc. 1-3 at p. 12). Furthermore, unlike *Lee's Ford*, the Disputes Clause of the subject lease does not reference the CDA. Instead, it provides that "[b]efore any party to the lease **may bring suit in any court** concerning an issue arising under or relating to this lease, such party must first seek in good faith to resolve the issue through negotiation or other forms of nonbinding alternative dispute resolution." (*Id.* at p. 17) (emphasis added). Here,

---

[2] The *Triple A* court also distinguished *Forman v. United States*, 767 F.2d 875 (Fed. Cir. 1985), in which the Federal Circuit noted that the CDA focuses on government procurement of property. In *Triple A,* however, the government was not procuring property; it already owned the property. The same is true here.

Plaintiffs clearly attempted, in good faith, to resolve the issue by offering to pay back rent, future rent, and fees before filing this lawsuit. Likewise, the Corps has offered to negotiate with Plaintiffs on a timetable for removing their personal belongings from the cabin and has indicated its willingness to allow Plaintiffs time to have the cabin moved to another location. (Doc. 12-2).

The Corps also references a provision in the Disputes Clause that requires any factual dispute to be resolved by the District Engineer, whose written decisions can then be appealed to the Division Engineer. But the Corps does not point to any factual disputes that would require resolution by the District Engineer, and the Court will not consider undeveloped and unsupported arguments. *See Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008) ("It is not the job of this court to develop arguments for [parties].").

Because the CDA does not apply, the Court finds it has subject matter jurisdiction over this case and denies the Corps' motion to dismiss for lack of subject matter jurisdiction.

## II. Temporary Restraining Order

The Corps also argues the TRO should be dissolved because Plaintiffs cannot demonstrate a "substantial likelihood of success on the merits of their complaint." It argues that the terms of the lease were clear and did not change, yet Plaintiffs did not make their $275 rent payment on time. Although Plaintiffs complain they never received the invoice or the delinquency notices, and even if the USPS is partly to blame for not forwarding Plaintiffs' mail and for the alleged forgery of its Certified Mail receipt,

Plaintiffs knew when the rent was due, where to send it, and what would happen if they failed to pay it.

In response, Plaintiffs assert they never received notice of the rent due, never received the delinquency letters, and upon discovery of the lease termination, immediately attempted to pay the amount due plus late fees and future rent. Plaintiffs contend they never intended to terminate the lease.

First, the Corps' assertion that Plaintiffs must demonstrate a "substantial likelihood of success" on the merits of their claim is wrong. As the Court noted in its prior order, at this point Plaintiffs need only show a "better than negligible change of succeeding." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999); *see also Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011). Upon further consideration of Plaintiffs' likelihood of success, however, the Court finds that Plaintiffs are doomed to fail.

Plaintiffs' Complaint alleges the Corps violated the Due Process Clause of the Fifth and Fourteenth amendments by terminating their lease without notice. "A procedural due process claim requires a two-fold analysis. First, we must determine whether the plaintiff was deprived of a protected interest; second, we must determine what process is due." *Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). Thus, the threshold question is whether Plaintiffs have a constitutionally protected property interest in the land they leased from the Corps. "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it,' as opposed to a 'unilateral expectation' or an 'abstract need or desire

for it.'" *McClung v. Paul*, No. 1:13-CV-00044-KGB, 2014 WL 4825266, at *13 (E.D. Ark. Sept. 26, 2014), *aff'd*, 788 F.3d 822 (8th Cir. 2015) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). The Constitution does not create property interests; due process protects property rights arising from independent sources. *Id.*

Here, Plaintiffs' only entitlement to the land was the lease between them and the Corps, which specifically states: "this lease grants no vested property rights but only affords a limited right to occupy the land pending termination as set out in the Condition on **TERMINATION**." (Doc. 1-3 at p. 12). The lease further restricted Plaintiffs from transferring or assigning the lease, subletting the premises, or granting any interest, privilege, or license to another without permission from the District Engineer. (*Id.* at p. 14). Based on these provisions, the Court finds that Plaintiffs have no constitutionally protected property interest in the lot.

Even if they had some protected property interest at issue, Plaintiffs' claim would still fail. Plaintiffs did not notify the Corps of their change in address, the Corps was not required to send them invoices, they knew that rent was due on January 1, 2021, they knew where to send the rent, and they had received delinquency notices in prior years warning them of the consequences of failing to pay rent on time. (Doc. 12-1). Yet they still failed to pay their rent within 90 days of the due date. Per the terms of the lease, "nonpayment of the rent for 90-days past the due date will be considered notice of termination of the lease by the Lessee." (Doc. 1-3 at p. 16). When Plaintiffs failed to pay within 90 days, the lease was terminated.

Because Plaintiffs have no legal right upon which to base their due process action,

the Court finds they no longer have a better than negligible chance of success on the merits of their claim. Accordingly, the previously issued Temporary Restraining Order is hereby **DISSOLVED**.

In an abundance of caution, however, the Court *sua sponte* **GRANTS** Plaintiffs leave to file an amended complaint that states a viable cause of action. Plaintiffs shall file their amended complaint, if any, on or before **January 5, 2022**. Failure to file an amended complaint by that date will result in the dismissal of this case with prejudice.

**IT IS SO ORDERED.**

DATED: December 6, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**